IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30070
_____

UNION PACIFIC RESOURCES COMPANY; AMOCO
PRODUCTION COMPANY,

                                              Plaintiffs-Appellants,

versus

ARTHUR NEIL SMITH; et al,

                                              Defendants,

CHESAPEAKE OPERATING COMPANY,

                                              Defendant-Appellee.

- - - - - - - - - - -
Appeal from the United States District Court
for the Middle District of Louisiana
(96-CV-7347)
- - - - - - - - - - -
November 5, 1999

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

WIENER, Circuit Judge.[*]

    In this diversity jurisdiction case, Plaintiffs-Appellants Union Pacific Resources Company ("UPR") and Amoco Production Company ("Amoco") were successful in obtaining judicial cancellation of an oil and gas lease that had been granted by their lessor, Defendant Arthur Neil Smith ("Lessor") to Chesapeake Operating Company ("Chesapeake") subsequent to his grant of an oil and gas lease to Amoco. Before us today is the collateral issue of attorney's fees and damages for failure timely to cause the

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

subsequent lease to be canceled from the public records. Specifically, Amoco and UPR appeal the district court's denial of their partial summary judgment motion for attorney's fees and damages purported to be recoverable from Chesapeake pursuant to provisions of Title 31 of the Louisiana Revised Statutes of 1950 (the "Mineral Code"). Chesapeake asserted in the district court that Amoco and UPR do not have standing to seek attorney's fees under the pertinent provisions of the Mineral Code; and, alternatively, that even if Amoco and UPR were found to have standing, they are not entitled to recovery. For the reasons set forth below, we affirm the district court's denial of attorney's fees to Amoco and UPR.

I.

Facts and Proceedings

Lessor granted a mineral lease (the Amoco Lease) to Amoco on March 17, 1996, covering property in Pointe Coupée Parish, Louisiana.[1] That lease was filed for record on April 3, 1996.

Also on April 3, Lessor was approached by a landman who was seeking a mineral lease for Chesapeake covering the same property as that covered by the Amoco Lease. He was successful in obtaining such a lease (the "Chesapeake Lease"), which was filed for record the next day, April 4, 1996. Nothing in the Chesapeake Lease indicates that it is a "top lease" or was granted "subject to" the previously-granted and prior-recorded Amoco Lease.

---

[1] Amoco assigned an undivided one-half interest in the Amoco Lease to UPR on September 23, 1996.

2

A few months later, Chesapeake made a demand on Amoco, under § 206 of the Mineral Code, to release its leasehold interest in the Lessor's property and have the inscription of the Amoco Lease erased from the public records.  Amoco countered with a like demand on Chesapeake.  Neither party complied within the thirty-day period prescribed in § 602A of the Mineral Code, or for that matter within the ninety-day period prescribed in § 602B.[2]

Amoco and UPR sued the Lessor[3] and Chesapeake in federal district court, seeking (1) a declaratory judgment that the Amoco Lease was valid, and (2) damages suffered by Amoco and UPR from the subsequent recordation of the Chesapeake Lease.  Chesapeake answered, denying Amoco and UPR's allegations and counterclaiming against Amoco.  In its counterclaim, Chesapeake sought a declaratory judgment that its lease was valid and that the prior-recorded Amoco Lease was null and void.[4]  After both Chesapeake and Amoco and UPR

---

[2] § 206.  Obligation of owner of expired mineral right to furnish recordable act evidencing extinction or expiration of right; mineral lease

A.  Except as provided in Paragraph B of this Article, when a mineral right is extinguished by the accrual of liberative prescription, expiration of its term, or otherwise, the former owner shall, within thirty days after written demand by the person in whose favor the right has been extinguished or terminated, furnish him with a recordable act evidencing the extinction or expiration of the right.
B.  When a mineral lease is extinguished prior to the expiration of its primary term, the former lessee shall, within ninety days after the extinguishment, record an act evidencing the extinction or expiration of the lease in the official records of all parishes wherein the lease is recorded.

[3] Within weeks after filing its suit, Amoco dismissed the Lessor as a co-defendant.

[4] Chesapeake also filed and later amended a third-party demand against the Lessor for damages and reimbursement of its lease bonus in the event that the Amoco Lease should be held

3

filed motions for partial summary judgment on the issue of the validity of their respective leases and the invalidity of the lease of party opposite, the district court ruled in favor of Amoco and UPR, holding the Amoco Lease valid and the Chesapeake Lease null and void. That ruling is not before us on appeal.

The instant appeal by Amoco and UPR challenges only the district court's denial of their claims for attorney's fees and damages asserted to result from Chesapeake's recordation of its lease and refusal to cancel it from the public records in response to Amoco's August 15, 1996 written demand to do so. The district court had the attorney's fees' issue briefed and conducted oral argument, then denied Amoco and UPR's motion and dismissed their claim for attorney's fees. The court's oral reason for its denial and dismissal was that Amoco and UPR lacked standing to recover attorney's fees under the provisions § 206 of the Mineral Code. On appeal, Amoco and UPR seek reversal of the district court's ruling on standing and a judgment declaring their entitlement to recover attorney's fees under § 206.

## II.

### Analysis

As noted, the district court rejected Amoco and UPR's application for attorney's fees on the basis of what the court labeled as "standing," referring at least implicitly to the proposition that those parties, as mineral lessees, have no right of action under subpart A or B of § 206 of the Mineral Code. For

---

valid. This issue is not before us on appeal.

4

the most expeditious and, we believe, most principled disposition of the instant appeal, however, we need not address that point; neither need we address Chesapeake's procedural contentions that Amoco and UPR failed to comply with the Federal Rules of Civil Procedure and the Local Rules of the District Court for the Middle District of Louisiana, in the manner and timing of those parties' application for attorney's fees under §§ 206 and 207 of the Mineral Code. Rather, we assume without granting that (1) Chesapeake and UPR, as lessees under a mineral lease, are included among the class of mineral rights owners who are entitled to assert claims for attorney's fees and damages under §§ 206 and 207,[5] and (2) Amoco and UPR are not procedurally barred from seeking attorney's fees under §§ 206 and 207 of the Mineral Code for their alleged failure to comply with the provisions of the Federal Rules of Civil Procedure or the Local Rules of the Middle District of Louisiana governing application for attorney's fees. Next, we take note of the undisputed facts that (1) neither Amoco nor UPR made written demand

_____

[5] Section 16 of the Mineral Code expressly recognizes that the term "mineral rights" includes the mineral lease as well as the mineral servitude and the mineral royalty. More specifically, the official Comment to § 206 declares that, in the context of this section, "the term 'mineral rights' used is inclusive of all forms of mineral rights, including mineral leases...." There can be no doubt, then, that subsection A of § 206 applies to extinction of, inter alia, mineral leases. The assumption we make arguendo today is that extinction of the Chesapeake lease was in favor of Amoco and UPR, as lessees under the competing Amoco lease, giving them "standing" under § 206A. Thus, the arguments that the term "mineral right" in subsection A of § 206 includes, inter alia, the mineral lease, and that the mineral lessee who succeeds in litigation brought to have a competing mineral lease declared void is a "person" in whose favor the lease is terminated, are neither frivolous nor illogical; we just do not decide those questions but assume the answers arguendo.

5

on Chesapeake to furnish a recordable act evidencing the extinction of the Chesapeake Lease at any time after the district court rendered the partial summary judgment that extinguished the Chesapeake Lease, and (2) within less than ninety days following the granting of that summary judgment by the district court, Chesapeake took the necessary action to evidence the extinction of its lease in the appropriate public records. Thus, even assuming as we have that Amoco and UPR are persons "in whose favor the [mineral] right has been extinguished" for purposes of subsection A of § 206, they still cannot recover attorney's fees or damages from Chesapeake under subsection A. They made no written demand for a recordable act evidencing the extinction of the Chesapeake Lease "when," i.e., _after_, the district court granted Amoco and UPR's partial summary judgment and before Chesapeake recorded an act evidencing extinction of its lease. Neither can Amoco and UPR recover under subsection B of § 206 because Chesapeake filed an act evidencing the extinction of its lease within less than ninety days following the judgment that extinguished it.

Amoco and UPR argue that they are nevertheless entitled to recover damages and attorney's fees under subsection A of § 206 by virtue of having furnished to Chesapeake a subsection A thirty-day demand on August 15, 1996. The gravamen of Amoco and UPR's argument is that because the judgment of the district court rendered the Chesapeake Lease null _ab initio_, the August 15, 1996 demand meets the requirements of § 206A. In other words, because the district court did not terminate the Chesapeake Lease but extinguished it as a nullity, without legal effects whatsoever, as of the date of its

6

confection, the August 15, 1996 demand was not premature even though it predated not just the judgment that extinguished the Chesapeake Lease but even the filing of the suit that eventually produced that judgment.

This argument defies both logic and the plain wording of the statute, and if accepted would produce absurd results — a consequence that would invalidate such a statutory construction under any system. The logical flaw in Amoco and UPR's position lies in their failure to distinguish temporally between the judicial extinction of the Chesapeake Lease itself and the retroactive <u>effects</u> of the extinction of that lease. The Lease was not an absolute nullity, void on its face; absent mutual cancellation by the parties, the Chesapeake Lease, like any other bilateral contract in Louisiana, could only be extinguished by a final and executory judgment of a competent court. Even though the effects of extinction of the mineral lease relate back to its confection and recordation, the extinction qua extinction does not. Consequently, the August 15, 1996 thirty-day demand was premature.

A fair reading of the plain wording of subsection A comports with that logic: "<u>[W]hen</u> a mineral right is <u>extinguished</u> [not "extinct"]...the former owner shall, within thirty days after written demand by the person in whose favor the right <u>has been</u> extinguished...furnish [such person] with a recordable act evidencing the extinction...of the right" (emphasis added). Clearly, (1) the thirty days commences with the written demand, (2) the demand must be furnished by or on behalf of the person in whose favor the subject mineral right "has been" extinguished, and (3) the

7

process commences only "when," i.e., <u>after</u> the lease is extinguished. We can read these words in no way other than to require that the extinction of the mineral right in question precede the furnishing of the thirty-day demand. First, the introductory "when" clause determines the time that the provision becomes effective —— "when," not "before" the lease is extinguished. Second, this reading is reinforced by the use of the past tense of the verb, to extinguish ("has been extinguished").

Finally, an exercise in <u>reductio ad absurdam</u> confirms our determination that the thirty-day demand must follow the extinction of the mineral right. For, if the interpretation advocated by Amoco and UPR were to prevail, the grantor of any mineral right could furnish a §206A thirty-day demand to his grantee the day after that mineral right is created and thereby preserve a right to recover attorney's fees years later, following any termination or extinction of that mineral right, even if the grantee were to furnish the recordable act evidencing the extinction on the very day of the judgment of extinction. Such a result is obviously not intended.

The same analysis holds true for subsection B of §206: No fair reading of the statute could abide the imposition of costs and attorney's fees on a mineral lessee whose lease is judicially extinguished years after its confection on the (il)logic that the effects of the judgment of extinction are retroactive, ergo the recording of an act evidencing that extinction more than ninety days after the original confection of the lease is untimely and thus exposes the mineral lessee to damages and attorney's fees under the statute.

III.

Conclusion

Even when we assume without granting that Amoco and UPR, as mineral lessees of the same property that was leased to Chesapeake, are "person(s) in whose favor" the Chesapeake Lease has been extinguished for purposes of §§ 206 and 207 of the Mineral Code, Amoco and UPR cannot recover under the instant facts. The Chesapeake Lease was extinguished by the grant of a judgment of nullity, and it is only _after_ such judgment was granted that a thirty-day demand under § 206 could be furnished to the former lessee. The date of extinguishment is also the time within ninety days of which an act evidencing extinction of the mineral lease must be recorded pursuant to subsection B, of § 206. In either case, the fact that the _effects_ of the judgment of extinction are retroactive is irrelevant. Here, no subsection A thirty-day demand was furnished after the Chesapeake Lease had been extinguished, so § 207 could not provide relief for a § 206A violation. As for § 206B, an act evidencing the extinction of that lease was filed in the appropriate records of Pointe Coupée Parish within less than ninety days following the judgment of extinction so no recovery could be had under that subsection either. Consequently, albeit for different reasons, the judgment of the district court rejecting the application of Amoco and UPR for damages and attorney's fees is, in all respects,

AFFIRMED.

9